# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| ORLANDO TYUS, | CASE NO. 5:22-cv-770 |
| Plaintiff, | |
| | JUDGE J. PHILIP CALABRESE |
| vs. | |
| | MAGISTRATE JUDGE AMANDA M. KNAPP |
| WARDEN, TIM MCCONAHAY, | |
| Defendant. | **REPORT & RECOMMENDATION** |

Petitioner Orlando Tyus ("Petitioner" or "Mr. Tyus") brings this habeas corpus action pursuant to 28 U.S.C. § 2254, having filed his federal habeas petition on March 1, 2022 (herein referred to as "Petition").  (ECF Doc. 1.)[1]  Mr. Tyus's Petition relates to his convictions for aggravated murder, murder, felonious assault, and having weapons while under a disability, and his related sentence to two definite terms of life without parole plus twenty-five years in Summit County Common Pleas Case No. CR-2018-09-3067-A.  (*Id.*; *see* ECF Doc. 13-1, pp. 29-34.)  In the Petition, he requests an evidentiary hearing.  (ECF Doc. 1, p. 15.)  Also pending before the Court is Petitioner's Second Motion to Stay Proceedings in the Interests of Justice ("Motion to Stay").  (ECF Doc. 28.)

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Mr. Tyus's Petition was docketed on May 12, 2022 (ECF Doc. 1), and he claims it was placed in the prison mailing system on March 1, 2022 (*id*. at p. 15). Respondent points out that this date is questionable considering that a certificate of service handwritten by Petitioner was filed with the Petition and states that the Petition was sent to the opposing party on April 26, 2022.  (ECF Doc. 13, p. 6, n. 2 (referencing ECF Doc. 1-3, p. 2).)  However, Respondent concedes that regardless of whether the Petition was filed on March 1 or April 26, 2022, it is timely.  (*Id.*)  Thus, the Court will accept the March 1, 2022 date given in the Petition.

This matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  The Petition and Motion are fully briefed.  (ECF Docs. 13, 26, 28, 29.)  Respondent filed the state court record in connection with the Return of Writ and separately filed the trial transcript.  (ECF Docs. 13-1, 14-1.)

For the reasons set forth below, the undersigned recommends that the Court **DENY** the Motion to Stay, **DENY** and/or **DISMISS** Ground One with prejudice, and **DISMISS** Grounds Two, Three, and Four with prejudice based on procedural default.

## I.     Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Ninth District Ohio Court of Appeals summarized the facts underlying Mr. Tyus's conviction and sentence as follows:

{¶2} At 3:39 a.m. on July 7, 2018, Akron police officers were dispatched in response to a 911 call reporting a shooting on Schiller Avenue on the north side of Akron. When they arrived, they discovered the body of B.R., who appeared to have been shot in the back of the head. B.R.'s brother, C.R., reported that two individuals had approached them from behind as they neared their parked car. One brandished a gun and demanded money from C.R., who then heard several gunshots as B.R. was shot by the other individual. C.R. fled on foot, then called 911. Police recovered three spent shell casings and one live round from the scene. Officers detained three men who were in the area near the time of the shooting—including one man who stopped to render aid to B.R.—but they determined that those individuals were not involved.

{¶3} Later that morning, at approximately 5:51 a.m., another individual placed a 911 call to report the discovery of a shooting victim in the area of 5th Avenue and Arlington Street on the south side of Akron. When the caller met with officers at her location, she led them to a parking lot where she had found the body of a man

she identified as "Shorty," a homeless individual who did odd jobs in the neighborhood. "Shorty," later identified as R.M., had suffered a gunshot wound to the head.

{¶4} When officers canvassed the area where R.M.'s body was discovered, they encountered a woman named C.H. C.H. reported that earlier that morning, she had been lured into an alley known as Minordy Place at its intersection with 6th Avenue by an individual who led her to believe that he had drugs for her. She informed the officers that once in the alley, a woman aimed a gun at her head. A man then did the same, but when he pulled the trigger, the gun did not fire. C.H. told the officers that she managed to flee, and she took them to the location of the incident, where they recovered two live rounds of ammunition.

{¶5} The three incidents did not appear to be connected, and police did not obtain information leading to any suspects until mid-August. At that time, a woman who had been taken into custody on drug charges and who was being recruited to serve as a confidential informant disclosed that she had information about a homicide. The woman, B.H., informed police that a younger acquaintance, C.J., had disclosed to her that she had participated in a series of shootings that occurred the weekend after the Fourth of July holiday. B.H. identified the two men who also participated in the shootings as "Bishop" and "Orka," who she described as half-brothers. B.H. told officers that she had originally heard that two men and one woman had been killed, but she later learned that the woman had escaped because a gun malfunctioned. As a result of their interview with B.H., the investigators obtained the names of Donyea Tyus, known as "Bishop," and Orlando Tyus, known as "Orka." They also interviewed C.J., who was in custody after a drug-related arrest at the time.

{¶6} Orlando Tyus and his brother, Donyea Tyus, were each charged with two counts of aggravated murder in violation of R.C. 2903.01(A), two counts of murder in violation of R.C. 2903.02(A), two counts of felonious assault in violation of R.C. 2903.11(A)(2), and one count of having a weapon while under disability in violation of R.C. 2923.13(A)(2). The aggravated murder and murder charges were accompanied by firearm specifications pursuant to R.C. 2941.145(A). Prior to trial, Orlando moved to sever their trials. The trial court denied the motion, and Orlando and Donyea were tried together to a jury. The jury found Orlando guilty of each charge. After merging the murder counts and related firearm specifications into the aggravated murder counts and related specifications, the trial court sentenced Orlando to life in prison without the possibility of parole as punishment for each count of aggravated murder. The trial court also sentenced Orlando to consecutive prison terms for each gun specification and each of the remaining counts.

*State v. Tyus*, 2020-Ohio-4455, ¶¶ 2-6, 2020 WL 5551751, at **1-2 (Ohio Ct. App. Sept. 16, 2020),

(ECF Doc. 13-1, pp. 134-36).

## II.      Procedural Background

### A.      State Court Conviction

On September 21, 2018, the Summit County Grand Jury indicted Mr. Tyus and his brother Donyea Tyus ("Donyea") on two counts of aggravated murder with firearm specifications (O.R.C. §§ 2903.01(A), 2903.01(F), 2929.02(A)) (Counts One and Three), two counts of murder with firearm specifications (O.R.C. §§ 2903.02(A), 2903.02(D), 2929.02(B)) (Counts Two and Four), two counts of felonious assault (O.R.C. §§ 2903.11(A)(2), 2903.11(D)(1)(a)) (Counts Five and Six), and one count each of having a weapon under a disability (O.R.C. §§ 2923.13(A)(2), 2923.13(B)) (Counts Seven (Donyea) and Eight (Mr. Tyus)).  (ECF Doc. 13-1, pp. 4-7.)  Mr. Tyus was arraigned and pled not guilty to all counts on September 28, 2018.  (*Id*. at p. 8.)

Mr. Tyus filed motions for a separate trial with requests for a hearing on February 1 and May 1, 2019.  (*Id*. at pp. 10-15.)  On April 30, 2019, he filed a motion to sever his case from that of Donyea, alleging their joinder was prejudicial.  (*Id*. at pp. 16-17.)  Following a hearing on May 1, 2019, the court denied all of Petitioner's motions on July 1, 2019.  (*Id*. at pp. 18-26.)

A jury trial on all charges commenced on July 8, 2019, and concluded on July 18, 2019. (*Id*. at p. 27; ECF Doc. 14-1.)  On July 19, 2019, the jury returned a guilty verdict on all counts against both defendants.  (ECF Doc. 13-1, p. 27; ECF Doc. 14-1, pp. 2320-26.)

On July 29, 2019, the trial court sentenced Mr. Tyus to definite terms of life without parole on Counts 1 and 3, which the court found merged with Counts 2 and 4.  (ECF Doc. 13-1, p. 30.)  The court also sentenced Mr. Tyus to three years each for the firearm specifications on Counts 1 and 3, eight years each for Counts 5 and 6, and three years for Count 8; all sentences were to be served consecutively.  (*Id*. at 31.)

4

**B.**    **Direct Appeal**

On August 28, 2019, through new counsel, Mr. Tyus filed a notice of appeal with the

Ohio Ninth District Court of Appeals.  (ECF Doc. 13-1, p. 35.)  In his March 25, 2020 appellate

brief, Mr. Tyus raised the following assignments of error:

1.  The trial court erred by denying Orlando Tyus' Motion to Sever his trial in
    violation of the 5th, 6th, and 14th Amendments to the U.S. Constitution and
    Art. 1 § 10 of the Ohio Constitution.

2.  The trial court erred in admitting overly gruesome photographs of victim Robert
    McCall, in violation of the 5th, 6th, and 14th Amendments to the U.S.
    Constitution and Art. 1, § 10 of the Ohio Constitution.

3.  Orlando Tyus was denied his right to effective assistance of counsel under the
    6th Amendment to the U.S. Constitution and Art. 1 §§ 1, 10, & 16 of the Ohio
    Constitution when counsel did not object to unduly prejudicial photographs of
    the co-defendant.

4.  The trial court committed plain error by admitting photographs of Donyea Tyus
    with a gun, in violation of the 5th, 6th, and 14th Amendments to the U.S.
    Constitution and Art. 1 § 10 of the Ohio Constitution.

5.  The trial court erred in the Having a Weapon While Under a Disability jury
    instruction, in violation of the 5th, 6th, and 14th Amendments to the U.S.
    Constitution and Art. 1 § 10 of the Ohio Constitution.

6.  Orlando Tyus' convictions were against the manifest weight of the evidence in
    violation of the 5th and 14th Amendments to the U.S. Constitution and Art. 1
    §§ 1, 10, & 16 of the Ohio Constitution.

(*Id*. at pp. 39-40.)  The State filed its appellate brief on April 27, 2020.  (*Id*. at pp. 80-109.)  On

September 16, 2020, the court of appeals overruled Mr. Tyus's assignments of error and affirmed

the trial court's judgment.  (*Id*. at pp. 134-57.)

On November 3, 2020, Mr. Tyus, through the same counsel, filed a motion to file a

delayed appeal with the Supreme Court of Ohio, (*id*. at pp. 161-64) which was granted on

December 29, 2020 (*id*. at p. 165).  In his January 19, 2021 memorandum in support of

jurisdiction, Mr. Tyus set forth the following two propositions of law:

1. Where an accused has not affirmatively endorsed or adopted the incriminating statements of a co-defendant, Crim. R. 8, Evid. R. 403, and *Bruton v. United States* require severance of indictments and trials to prevent material prejudice of the accused due to inflammatory self-incriminating statements of a co-defendant.

2. Where a trial court admits evidence that violates Evid. R. 401, 402, and 403 and actual prejudice results, a reviewing court must clearly delineate the facts and circumstances that lead them to determine whether it rises to the level of a defendant's being materially prejudiced.

(*Id.* at p. 167.)  The State filed a memorandum opposing jurisdiction (*id.* at pp. 178-82), and on March 30, 2021, the Ohio Supreme Court declined jurisdiction (*id.* at p. 183).

## C.    **Federal Habeas Corpus Petition**

Mr. Harris, acting pro se, filed the instant Petition on March 1, 2022.  (ECF Doc. 1.)  He raises four grounds for relief:

**Ground One**: U.S. Constitutional right to 5th, 6th, and 14th Amendments was [sic] violated when severance was not allowed.

**Supporting Facts**: Trial proceeded with alleged co-defendant.

**Ground Two**: U.S. Constitutional right to trial counsel was violated.

**Supporting Facts:** 1) no objection to co-defendants photos being admitted; 2) no notice of alibi under Ohio Crim. R. 12.1 was filed even though provided; 3) no defense; 4) never subpoenaed defense cell phone expert even tho [sic] funds was [sic] granted.

**Ground Three:** U.S. Constitutional right to due process was violated when photos was [sic] admitted into evidence.[2]

**Ground Four:** U.S. Constitutional right was violated when no evidence was lodged connecting Mr. Tyus. [sic]

**Supporting Facts:** No direct or circumstantial evidence. Testimony came from drug addicted. [sic]

---

[2] Petitioner did not include supporting facts for Ground Three in the Petition, instead directing the Court to "see separate motion filing."  (ECF Doc. 1, p. 8.)  What separate motion filing he meant to reference was not evident from the record.

(*Id*. at pp. 5-10.)  The Petition is ripe for review.

**D.     Motions to Stay**

On March 16, 2023, Mr. Tyus filed a Motion to Stay in Abeyance, seeking a stay of the Petition while he filed a motion for a new trial in state court based on "newly discovered evidence in the form of an affidavit from an alibi witness."  (ECF Doc. 18.)   In a supplement to the motion, Mr. Tyus asserted that he sought the stay to allow him to amend his Petition and "further support or preserve his claim of actual innocence."  (*Id*. at p. 2; ECF Doc. 22.)  The undersigned recommended denial of the motion because Mr. Tyus had not demonstrated good cause for his failure to exhaust any claims related to the unnamed alibi witness and because he had not shown that a return to state court was warranted to address evidence related to his actual innocence.  (ECF Doc. 24, pp. 4-6.)

The Court adopted the Report and Recommendation on September 19, 2023, and denied Petitioner's first Motion to Stay in Abeyance.  (ECF Doc. 25.)  In doing so, the Court noted: (1) the denial of the stay would not prevent Petitioner from exhausting his remedies in state court while the Petition remained pending; and (2) any evidence of actual innocence presented by Petitioner may allow him to "'pass through' any procedural default 'and argue the merits of his underlying claim.'"  (*Id.* at p. 4 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).)

On December 10, 2024, Petitioner filed a second Motion to Stay, indicating that he was able to obtain "new notarized statements from a witness whom [sic] explains accounts of an alibi that could not have been discovered for a defense of innocence until many years after conviction."  (ECF Doc. 28, p. 2.)  He asks the Court to stay his Petition pending the outcome of a post-conviction petition he filed with the state trial court.  (*Id.*)  That motion remains pending.

Before analyzing the Petition, the undersigned will address the second Motion to Stay.

### III.    Motion to Stay

A state prisoner with federal constitutional claims must fairly present them in state court before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  Even where a petitioner presents a "mixed petition" containing exhausted and unexhausted claims, comity requires that state courts be given the first opportunity to review the unexhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).

If a mixed petition is dismissed while a petitioner pursues unexhausted claims in state court, however, there is a concern that any exhausted claims will become time-barred under the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  That is why the Supreme Court clarified in *Rhines v. Weber*, 544 U.S. 269 (2005), that a district court with a "mixed petition" may stay the case and permit the petitioner to present his unexhausted claims to the state court before the federal court undertakes review of the petition.  *See Rhines*, 544 U.S. at 277.

A "stay and abeyance" is available where the district court determines that: (1) there was good cause for the petitioner's failure to exhaust the relevant claims first in state court; (2) the unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in abusive litigation tactics or intentional delay.  *Id.*  The *Rhines* Court cautioned that a stay and abeyance should be used sparingly because frequent use could undermine AEDPA's goals of "'reduc[ing] delays in the execution of state and federal criminal sentences'" and streamlining federal habeas proceedings by encouraging petitioners to seek relief first from the state courts.  *Id.* at 276–77 (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)).

In the new Motion to Stay, Mr. Tyus asserts that a stay and abeyance is warranted now—despite the denial of his prior motion—because he was able to obtain a new notarized statement from an alibi witness after the denial of the prior motion, a statement that he asserts could not be discovered until many years after his conviction.  (ECF Doc. 28, p. 2.)  He reports that he has filed a post-conviction petition with the state court, seeking a hearing and a new trial, so that he can "establish an explanation of his innocence." (*Id.*)  He does not explain what federal habeas claim he is seeking to exhaust through this state court filing.  (*Id.*)  In support of the motion, Petitioner attaches a hand-written statement by Joshua Hubbard which was apparently notarized on October 26, 2023.  (ECF Doc. 28-1.)  In the statement, Mr. Hubbard asserts that he spent the day working with Mr. Tyus on July 6, 2018, and remained with Mr. Tyus from 5:00 p.m. through 2:00 a.m., when he went to bed; he later awoke to hear Mr. Tyus singing in the shower.  (*Id.*)

Turning to the first *Rhines* element, the undersigned again concludes that Mr. Tyus has failed to demonstrate "good cause" for his failure to timely exhaust his (unspecified) claims relating to the alibi witness in state court.  Mr. Tyus first advised this court of "newly identified evidence in the form of an affidavit from an alibi witness" in March 2023.  (ECF Doc. 18.)  After being given an additional opportunity to identify the witness, describe the affidavit, explain the circumstances surrounding the discovery of the new evidence, and further explain "what additional grounds for relief he would seek" (ECF Doc. 21), Mr. Tyus only clarified that the affidavit was from a "prior co-worker and tenant" who had not been subpoenaed by the trial attorneys (ECF Doc. 22).  The undersigned therefore found Mr. Tyus had failed to demonstrate "good cause" and recommended the denial of the first Motion to Stay in August 2023.  (ECF Doc. 24.)  The Court adopted the recommendation in September 2023, noting Mr. Tyus's failure to file an objection.  (ECF Doc. 25.)  Although Mr. Hubbard's statement was apparently

9

notarized a month later, in October 2023 (ECF Doc. 28-1), Mr. Tyus did not file the present

motion December 2024 (ECF Doc. 28).  In the new motion, Mr. Tyus again fails to explain the

reasons for his delay in exhausting claims relating to Mr. Hubbard's alleged alibi testimony, and

again fails to specify what federal habeas grounds for relief he is seeking to exhaust.  Even

though Mr. Hubbard states that he was living with Mr. Tyus at the time of the crimes, that he

reached out to Mr. Tyus's trial counsel before the trial, and that he also reached out to the

Innocence Project and Mr. Tyus's family (ECF Doc. 28-1), Mr. Tyus does not explain why he

failed to raise any claims relating to this testimony in his March 2020 direct appeal or thereafter.

Further, even though Mr. Tyus knew of Mr. Hubbard's testimony when he filed the first Motion

to Stay in March 2023 and Mr. Hubbard's statement is dated October 2023, Mr. Tyus has not

specified when he sought relief in state court and has not explained why he waited until

December 2024 to file the present Motion to Stay.  For all of these reasons, the undersigned finds

Mr. Tyus has not shown "good cause" for his failure to exhaust his federal habeas claim(s)

relating to the new alibi evidence, and thus cannot support a stay and abeyance under *Rhimes*.

As to the second *Rhines* factor, the undersigned also concludes that Mr. Tyus has failed

to show that his unexhausted claims—whatever they may be—are not plainly meritless.  First,

Mr. Tyus has made this analysis largely impossible because he has repeatedly failed to specify

what, if any, federal habeas claim(s) he would seek to assert if given the opportunity to exhaust

his state remedies relating to Mr. Hubbard's alibi testimony.  Second, to the extent Mr. Tyus

might seek to assert a federal habeas claim for "actual innocence," the Sixth Circuit observes that

"the Supreme Court has not decided whether actual innocence is a substantive ground for relief"

and that actual innocence is typically used instead as a "'gateway' by which a petitioner may

belatedly file other constitutional and federally cognizable claims."  *Hubbard v. Rewerts*, 98

F.4th 736, 742-43 (6th Cir. 2024), cert. denied sub nom. *Hubbard v. Tanner*, 145 S. Ct. 1201, (2025) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 393 (2013)).  And finally, the affidavit is insufficient to prove Mr. Tyus's actual innocence, since it establishes an alibi for Mr. Tyus that ended at 2:00 a.m. on July 7, 2018 (ECF Doc. 28-1), when 911 calls establish that the crimes for which Mr. Tyus was convicted were reported at 3:39 a.m. and 5:51 a.m. on July 7, 2018 (ECF Doc. 13-1, p. 134).  The undersigned cannot find based on the present record that Mr. Tyus seeks to exhaust a new habeas claim that is *not* plainly meritless.  For this additional reason, a stay and abeyance is not warranted under *Rhimes*.

For all of the reasons set forth above, the undersigned recommends that the Court **DENY** Petitioner's second Motion to Stay (ECF Doc. 28).

## IV.    Petition for Habeas Corpus – Law & Analysis

In the Return of Writ, Respondent argues that Ground One of the Petition should be denied on the merits (ECF Doc. 13, pp. 16-23), while Grounds Two, Three and Four should be dismissed as procedurally defaulted (*id.* at pp. 9-15) or alternatively denied on the merits (*id.* at pp. 23-41).  Mr. Tyus argues that his Petition should be granted on the merits, and states alternately that his claims are not procedurally defaulted and that any default should be excused based on ineffective assistance of counsel and/or actual innocence.  (*See* ECF Docs. 1, 26.)

For the reasons set forth below, the undersigned recommends that the Court **DENY** and/or **DISMISS** Ground One and **DISMISS** Grounds Two, Three, and Four.

### A.    Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As

amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)).  Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted unless the adjudication of the claim":

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

**B.    Ground One is Non-Cognizable and/or Lacking in Merit**

In Ground One, Mr. Tyus asserts that his 5th, 6th, and 14th Amendment rights were violated when the trial court did not sever his trial from that of his co-defendant.  (ECF Doc. 1, p. 5.)  In his Traverse, he argues more specifically that his right to confront the witnesses against him was violated, consistent with *Bruton v. United States*, 391 U.S. 123 (1968), when his codefendant's out of court "confession" was admitted without severing the two trials.  (ECF Doc. 26, pp. 17-21.)  Respondent argues: the issue presents a non-cognizable matter of state law because the trial judge had discretion to decide whether to sever the trials (ECF Doc. 13, p. 18);

12

Petitioner has not shown that his joint trial resulted in prejudice so great he was denied a fair trial (*id*. at 18, 21-23); and Petitioner's *Bruton* arguments fail because the state appellate court reasonably found his codefendant's out of court statements were not testimonial (*id*. at 21).[3]  The undersigned turns to the cognizability and merits of Mr. Tyus's claim in Ground One.

### 1.      Any Challenge in Ground One Under State Law is Not Cognizable

As a general matter, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]"); *Engle v. Isaac*, 456 U.S. 107, 121, n. 21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted)).

Mr. Tyus argues that the state appellate court erred because it did not address the fact that his co-defendant's statements "confessing to his action were irrelevant" and caused "undu[e] prejudice to [Mr. Tyus]'s right unless [he] affirmed the statements as including his own actions." (ECF Doc. 26, p. 20.)  To the extent Mr. Tyus seeks federal habeas relief because the rulings of the state courts were contrary to state law, he fails to state a cognizable claim upon which federal habeas relief may be granted because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.

---

[3] The undersigned does not address Respondent's arguments regarding Mr. Tyus's due process rights under the 14th Amendment (ECF Doc. 13, pp. 18, 21-23), since Mr. Tyus did not fairly present a 14th Amendment due process claim to the state courts (*see* ECF Doc. 13-1, pp. 53-57, 169-70, 173-74).  *See Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003), *aff'd,* 420 F.3d 632 (6th Cir. 2005).  Further, the Traverse does not meaningfully argue that trial violated Mr. Tyus's 14th Amendment due process rights; rather he bases his claim on the 6th Amendment's Confrontation Clause, *Bruton*, and the admission of his co-defendant's out-of-court statements. (*See* ECF Doc. 26, pp. 17-21.)  Discussion of the 14th Amendment is generally limited to an observation that the Confrontation Clause applies to the states through that Amendment.  (*Id.* at 19.)

Accordingly, to the extent Mr. Tyus seeks relief based on any violation of state law, the

undersigned recommends that the Court **DISMISS** Ground One as not cognizable on federal

habeas review.

### 2. Petitioner Has Failed to Show a Confrontation Clause Violation Warranting Federal Habeas Relief

In its September 16, 2020 opinion, the state court of appeals analyzed Mr. Tyus's claim

that the trial court erred by not severing his trial from his co-defendant's, explaining:

> {¶8} In his first assignment of error, Orlando Tyus argues that the trial court erred by denying his motion to sever his trial from that of his brother because one of the State's witnesses testified with respect to out-of-court statements made by Donyea. This Court does not agree.

> {¶9} Crim.R. 8(B), which permits joinder of multiple defendants, provides that "[t]wo or more defendants may be charged in the same indictment * * * if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct." The law favors joinder because it promotes the conservation of judicial resources and mitigates the possibility of inconsistent results. *State v. Boone*, 10th Dist. Franklin No. 14AP–87, 2015-Ohio-2648, ¶ 25. Nevertheless, when it appears that joinder of multiple defendants for trial prejudices a defendant, a trial court must sever the defendants and conduct separate trials. *See* Crim.R. 14.
> {¶10} The Sixth Amendment to the United States Constitution guarantees an accused the right to confront witnesses against him. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). The Confrontation Clause is implicated by the admission of out-of-court statements that are testimonial in nature when the declarant does not testify in the proceeding. *See Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309–310 (2009). Only testimonial statements make a declarant a "witness" for purposes of the Confrontation Clause, and "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006).

> {¶11} In *Bruton v. U.S.*, 391 U.S. 123 (1968), the United States Supreme Court recognized that when multiple defendants are tried together, the admission of an out-of-court confession by a co-defendant that incriminates the defendant violates the Confrontation Clause, and the violation cannot be cured by means of a limiting instruction. *Id.* at 126, 137. The same constitutional infirmity may be present when the out-of-court statements were made to a prosecution witness other than a police officer. *See State v. Moritz*, 63 Ohio St.2d 150, 154 (1980). Similarly, an out-of-court statement by a co-defendant may incriminate a defendant even if the

defendant is not mentioned by name. *Id.* at 155, quoting *Fox v. State*, 384 N.E.2d 1159, 1170 (Ind. App. 1979).

{¶12} Because *Bruton* violations are grounded in the Confrontation Clause, however, the out-of-court statements at issue must be testimonial for the protections of the Confrontation Clause to attach. *U.S. v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009). "'*Bruton* is simply irrelevant in the context of nontestimonial statements * * * Statements that do not implicate the Confrontation Clause, a fortiori, do not implicate *Bruton*.'" (Alterations in original.) *State v. Luckie*, 5th Dist. Richland Nos. 16CA91, 16CA92, 16CA93, 2018-Ohio-594, ¶ 44, quoting *U.S. v. Dargan*, 738 F.3d 643, 651 (4th Cir. 2013). [. . .].

{¶13} Statements given to police officers are testimonial when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. Because some statements made to persons other than police officers may be testimonial in nature, they are not categorically excluded from the scope of the Confrontation Clause, but that fact is "highly relevant." *Ohio v. Clark*, 576 U.S. 237, 249 (2015). "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Id.* As with statements given to law enforcement, the primary purpose test controls. *See id.* at 245-246. The primary purpose test is an objective inquiry that takes into account the totality of the surrounding circumstances. *See State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 156. Relevant circumstances that bear on the primary purpose inquiry are the identity of the questioner, the existence of an ongoing emergency, the relative informality of the setting, and application of traditional rules regarding hearsay to the statements at issue. *See Clark* at 244-245, 249.

{¶14} Orlando argues that the trial court erred by denying his motion to sever because the anticipated testimony of B.H., a fact witness called by the State, included statements made to her by Donyea that were circumstantial evidence tending to prove that he participated in the crimes charged against him. Specifically, B.H., who did testify at trial, explained that several weeks after the events in question, Orlando and Donyea were present in her home, where they sat on either side of her on a sectional sofa during a conversation. According to B.H.'s testimony, Donyea expressed concern about C.J.'s recent arrest and asked B.H. "if [C.J.]'s going to keep it silent, keep it 100." B.H. explained that by asking this question, Donyea inquired whether C.J. would disclose what she knew about the crimes, although he did not specifically reference murder. B.H. also explained that although Donyea did the talking, Orlando "always kind of nodded and said yes."

{¶15} Donyea's statements were made in an informal setting to an acquaintance with no connection to law enforcement. Like statements made to a friend while incarcerated or to a fellow inmate, these statements were not testimonial in character. *State v. Henderson*, 7th Dist. Mahoning No. 16 MA 0057, 2018-Ohio-

5124, ¶ 38; *Carter*, 2017-Ohio-7501, at ¶ 36-39; *Newsome*, 2012-Ohio-6119, at ¶ 31. Consequently, the Confrontation Clause was not implicated, and *Bruton* did not require the trial court to sever Orlando's trial based upon them. *See Carter* at ¶ 39; *Newsome* at ¶ 31, 33. Orlando Tyus' first assignment of error is overruled.

(ECF Doc. 13-1, pp. 136-39.)

Mr. Tyus argues that the appellate court's decision was improper because the court "resort[ed] to non-applicable legal distinctions" rather than addressing whether the evidence showed he made "clear affirmations that he participated in [his co-defendant]'s confessed conduct." (ECF Doc. 26, p. 21.) He also argues: "without clear indications of joint participation by the accused, a joint trial should not be held where a co-defendant's statements would be so inflammatory as to materially prejudice the trial of the accused." (*Id.*) Essentially, he appears to argue that the state court erred by finding the out of court statements were non-testimonial rather than addressing the merits of his *Bruton* and state law claims.

To succeed on Ground One, Mr. Tyus must establish either that the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181. Where, as here, a state court of appeals reached the merits of the constitutional claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *See Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 103, 105). Before turning to these arguments, the undersigned will first outline the Supreme Court precedent relating to the Confrontation Clause and joint trials.

i.      **Federal Legal Standard for Confrontation Clause and Joint Trials**

The Sixth Amendment's Confrontation Clause provides: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. Amen. VI.  "[T]his bedrock procedural guarantee applies to both federal and state prosecutions."  *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (citing *Pointer v. Texas*, 380 U.S. 400, 406 (1965)).  Based on this procedural guarantee, the Supreme Court has held that it is a violation of the Confrontation Clause to admit evidence of an out of court confession by one defendant that implicates another defendant, where the two defendants are tried together, even if the jury is instructed to consider the confession as evidence only against the first defendant. *Bruton v. United States,* 391 U.S. 123 (1968); *see also Richardson v. Marsh,* 481 U.S. 200, 206 (1987) ("Where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand.").

But the Supreme Court has also explained that the Confrontation Clause applies only "to 'witnesses' against the accused—in other words, those who 'bear testimony,'" explaining that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."  *Crawford*, 541 U.S. at 51 (citation omitted).  Accordingly, courts have consistently affirmed that the Confrontation Clause is only implicated when a statement is "testimonial."  *See id.* at 68 (holding that the Sixth Amendment applies "where testimonial evidence is at issue"); *Davis v. Washington*, 547 U.S. 813, 821 (2006) (confirming that only "'testimonial statements'. . . cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."); *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009) ("Because it is premised on the Confrontation Clause, the *Bruton* rule,

like the Confrontation Clause itself, does not apply to nontestimonial statements.") (citing *United States v. Pugh*, 273 F. App'x 449, 455 (6th Cir. 2008)).

Testimonial statements may include "formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," "[s]tatements taken by police officers in the course of interrogations," and statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-53 (citations and quotation marks omitted).  But statements made for the "primary purpose" of "enabl[ing] police assistance to meet an ongoing emergency" are not considered testimonial.  *Davis*, 547 U.S. at 822; *see Michigan v. Bryant*, 562 U.S. 344, 374-75 (2011) (clarifying standard for assessing "whether the primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency") (internal citations omitted)).

"Because at least some statements to individuals who are not law enforcement officers could conceivably raise confrontation concerns," the Supreme Court has "decline[d] to adopt a categorical rule excluding them from the Sixth Amendment's reach." *Ohio v. Clark*, 576 U.S. 237, 246 (2015).  "Nevertheless, such statements are much less likely to be testimonial than statements to law enforcement officers." *Id.*  In determining whether a statement to a person who is not a law enforcement officer is "testimonial," courts must consider "all the relevant circumstances" and assess whether the statements were made to the non-law-enforcement person for the "primary purpose" of gathering evidence to support a future prosecution. *Id.* at 246-47.

When addressing a challenge to evidence based on the Confrontation Clause, the Sixth Circuit has instructed courts to start with "a threshold determination" of "whether the statements . . . are 'testimonial' in nature." *Akins v. Warren*, 362 F. App'x 508, 512 (6th Cir. 2010) (citing *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004)).  "The proper inquiry . . . is whether

18

the declarant intends to bear testimony against the accused."  *Cromer*, 389 F.3d at 675.  The Sixth Circuit has explained "[t]hat intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime."  *Id.*

The undersigned now turns to whether Mr. Tyus has shown that the state court's decision applying the *Bruton* standard was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)-(2).

### ii.    The State Court Decision was Not Contrary to Clearly Established Federal Law as Determined by the U.S. Supreme Court

The state court of appeals rejected Mr. Tyus's argument that his trial should have been severed from his co-defendant's under *Bruton*, finding that the Confrontation Clause and *Bruton* were not applicable because the out of court statements his co-defendant allegedly made to an acquaintance were "were not testimonial in character."  (ECF Doc. 13-1, p. 139.)  Mr. Tyus contends that the state court's reasoning is in error because it ended its analysis with the finding that the statements were not testimonial, suggesting that the state appellate court should have analyzed whether the statements "materially prejudiced him."  (ECF Doc. 26, p. 21.)  But he did not identify any "clearly established Federal law, as determined by the Supreme Court of the United States" to support this contention.  Indeed, applicable Supreme Court precedent—as discussed above—indicates that an analysis under the Confrontation Clause is not appropriate for out of court statements that are not "testimonial."

Here, the state court of appeals accurately concluded, based on U.S. Supreme Court precedent, that the Confrontation Clause only applies where testimonial evidence is at issue.

(ECF Doc. 13-1, pp. 137-38 (citing, *inter alia*, *Clark*, 576 U.S. at 246; *Davis*, 547 U.S. at 821; *Crawford*, 541 U.S. at 54; *Bruton*, 391 U.S. at 126, 137; *Johnson*, 581 F.3d at 326).)  The Court went on to apply the "primary purpose" test to find that the relevant out of court statements were not testimonial.  (*Id*. at pp. 138-39.)  Considering the clear Supreme Court precedent holding that *Bruton* does not apply to non-testimonial statements, the undersigned finds that the state court's decision to limit its analysis of Petitioner's *Bruton* claim to a finding that the statements were not testimonial was not contrary to clearly established federal law under § 2254(d)(1).

  **iii.**  **The State Court Did Not Unreasonably Apply the Law to the Facts**

  Although Mr. Tyus did not argue that the state appellate court made an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), when it found his co-defendant's out of court statements were not testimonial, the undersigned will briefly address the issue given Petitioner's pro se status.

  The out of court statements at issue were an inquiry from Mr. Tyus's co-defendant to an acquaintance, asking whether a mutual associate would report unspecified activities to the police. (ECF Doc. 13-1, p. 138.)  The statements were made in a casual setting to an acquaintance with no known connection to law enforcement, therefore falling well within the parameters of statements numerous federal courts have found to be nontestimonial.  *See, e.g., United States v. Mooneyham,* 473 F.3d 280, 286-87 (6th Cir. 2007) (finding a co-defendant's out-of-court statements to an undercover officer whose status was unknown to the declarant were nontestimonial); *United States v. Johnson*, 440 F.3d 832, 843 (6th Cir. 2006) (finding an unwitting declarant's secretly recorded statements to a close friend were nontestimonial); *Brown v. Epps*, 686 F.3d 281 (5th Cir. 2012) (findings recorded statements casually made during a drug deal were not testimonial); *United States v. Watson*, 525 F.3d 583, 589 (7th Cir. 2008) ("[A]

20

statement unwittingly made to a confidential informant . . . is not 'testimonial' for Confrontation

Clause purposes.").  Therefore, the undersigned finds that Petitioner has also not shown the state

court's decision unreasonably applied the law to the facts under § 2254(d)(2).

Accordingly, to the extent Mr. Tyus is seeking federal habeas relief that is cognizable

under AEDPA, the undersigned recommends that the Court **DENY** Ground One on its merits.

**C.     Grounds Two, Three, and Four Were Procedurally Defaulted**

Respondent argues that Grounds Two, Three and Four should be dismissed based on

procedural default (ECF Doc. 13, pp. 9-15) or alternatively denied on the merits (*id.* at pp. 23-

41).  Mr. Tyus argues that his claims are not procedurally defaulted and that any default should

be excused due to ineffective assistance of counsel and actual innocence.  (*See* ECF Docs. 1, 26.)

The undersigned will address each of the three grounds in turn.

**1.     Legal Standard for Procedural Default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted

all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal

constitutional claims must fairly present those claims to the state courts before raising them in a

federal habeas corpus action.  28 U.S.C. §§ 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6

(1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*,

444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003))

("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not

'fairly presented' to the state courts").

To satisfy the fair presentation requirement, a habeas petitioner must present both the

facts and legal theories underpinning his claims to the state courts.  *McMeans v. Brigano*, 228

F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state

courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987).  A constitutional claim must also be presented to the state's highest court to satisfy the fair presentation requirement.  *See O'Sullivan*, 526 U.S. at 845-48; *Hafley*, 902 F.2d at 483.

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle*, 456 U.S. at 125 n.28).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*  In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was

22

actually prejudiced by the alleged constitutional error.  785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E. 2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted a waiver).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims.  *See Williams*, 460 F.3d at 806 (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## 2.  Ground Two is Procedurally Defaulted

In Ground Two, Mr. Tyus claims that he was denied the effective assistance of counsel when his trial attorney failed to: object to the admission of photographs of his co-defendant; file a notice of alibi under Ohio Crim. R. 12.1, even though an alibi was provided; make a defense; and subpoena a cell phone expert when Petitioner's defense fund would have paid for it.  (ECF Doc. 1, pp. 5-10; ECF Doc. 26, p. 25.)  Respondent notes that Mr. Tyus raised only one of these ineffective assistance of counsel claims in his direct appeal, the claim for ineffective assistance based on trial counsel's failure to object to admission of unduly prejudicial photographs of his co-defendant, and that he abandoned even that claim when he failed appeal the state court ruling on that issue to the Supreme Court of Ohio.  (ECF Doc. 13, p. 10.)  Thus, Respondent argues that Mr. Tyus has procedurally defaulted all of the claims articulated in Ground Two of the Petition. (*Id.* (citing *O'Sullivan*, 526 U.S. at 847).)

"[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston*, 282 F. Supp. 2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  Although Mr. Tyus presented one of the stated ineffective assistance of counsel claims in his direct appeal (ECF Doc. 13-1, pp. 39-40), he did not seek review of the appellate court's ruling on that assignment of error in his appeal to the Supreme Court of Ohio (*id.* at p. 167).  It is thus clear that Mr. Tyus failed to pursue the claims in Ground Two through the state's ordinary appellate review procedures, resulting in a procedural default. [4]

---

[4] Indeed, Petitioner's claims that trial counsel was deficient for failing to make a defense, investigate an alibi witness, or call a cell phone expert are doubly defaulted, as he never raised the claims before the appellate court. (*See* ECF Doc. 13-1, pp. 60-63 (arguing solely that trial counsel was deficient for failing to object to the photos of

###### i.     Petitioner Has Not Shown "Cause" to Excuse the Procedural Default

Mr. Tyus does not explain his failure to raise most of Ground Two's ineffective assistance claims in his direct appeal but appears to argue that there is "cause" to excuse any procedural default of Ground Two because his appellate counsel was ineffective in failing to appeal his sole ineffective assistance claim to the Supreme Court of Ohio.  (ECF Doc. 1, p. 7 (stating that Mr. Tyus did not exhaust Ground Two because "appeal attorney did not present to Ohio Supreme Court"); ECF Doc. 26, p. 15 (discussing law on ineffective assistance of counsel as cause to excuse procedural default without any substantive argument).)

To establish "cause" to excuse a procedural default, a petitioner must point to "something external . . . that cannot be fairly attributed to him" and "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).  "Attorney error that constitutes ineffective assistance of counsel" may show "cause" to overcome default.  *Id.* at 754.  But a "constitutional claim of ineffective assistance of counsel" may only be asserted "at a stage of the proceedings when there is a right to counsel under the Sixth Amendment."  *Smith*, 463 F.3d at 433 (citing *Coleman*, 501 U.S. at 752).

Here, Mr. Tyus appears to argue that the appellate attorney who filed his appeal with the Supreme Court of Ohio was ineffective in failing to challenge the appellate court's ruling on the ineffective assistance claim he brought in his direct appeal.  (ECF Doc. 1, p. 7.)  However, "a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (citing *Wainwright v. Torna*, 455 U.S. 586 (1982) and *Ross v. Moffitt*, 417 U.S. 600 (1974)).  Because

---

Petitioner's co-defendant).)  To fairly present an argument before the state courts, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts.  *McMeans*, 228 F.3d at 681.

Mr. Tyus did not have a constitutional right to be represented by counsel in his discretionary appeal to the Supreme Court of Ohio, no alleged attorney error in prosecuting that appeal can be used to establish "cause" to excuse his procedural default.  *See Coleman*, 501 U.S. at 757 (finding attorney error cannot excuse procedural default in a federal habeas case where there was no constitutional right to counsel).

Accordingly, the undersigned concludes that Mr. Tyus has failed to establish "cause" to excuse his procedural default.  Since he has failed to show "cause," it is not necessary to consider the issue of "prejudice."  *See Engle*, 456 U.S. at 134, n. 43.  Mr. Tyus has therefore failed to support excusing the procedural default of Ground Two based on cause and prejudice.

### ii.    Petitioner Has Not Shown a Fundamental Miscarriage of Justice

Absent a showing of cause and prejudice, a procedural default may also be excused upon a showing that a failure to consider the relevant claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.   "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren*, 440 F.3d at 764 (quoting *Murray*, 477 U.S. at 496).  For an actual innocence claim to be credible, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).   He must further "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Id.* at 327.  This is intended to permit petitioners with "truly extraordinary" cases a "meaningful avenue by which to avoid a manifest injustice."  *Id.* (internal quotations omitted).  Importantly, "'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

While Mr. Tyus cites to caselaw regarding the use of the "actual innocence gateway" to excuse procedural default in his Traverse, he does not specifically identify new reliable evidence to support his allegations of constitutional error or explain why his case is one of the few "truly extraordinary" cases warranting the requested relief.  (*See* ECF Doc. 26, pp. 15-17.)  Similarly, although Mr. Tyus included an "actual innocence declaration" with his Petition and identified the declaration as evidence of his "procedural default defense," the declaration simply states that he swears under penalty of perjury that he is innocent; the declaration does not reference any "new reliable evidence" demonstrating his actual innocence.  (*See* ECF Doc. 1-4, p. 1.)

Considering Petitioner's pro se status, the undersigned is mindful that Mr. Tyus has also filed two motions to stay that are premised on the existence of "newly discovered evidence in the form of an affidavit from an alibi witness" (ECF Doc. 18) and "new notarized statements from a witness who[] explains accounts of an alibi that could not have been discovered for a defense of innocence until many years after conviction (ECF Doc. 28).  But even assuming that Mr. Tyus intends to offer the "new" alibi testimony outlined in his motions to stay to support excusing his procedural default based on actual innocence, the limited information and arguments offered in the motions to stay are insufficient to "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Schlup*, 513 U.S. at 327.

The notarized statement from the alleged alibi witness, Joshua Hubbard, indicates the following: (1) Mr. Hubbard and Mr. Tyus shared a rented residence; (2) both went to work together on July 6, 2018, spent the day cleaning, and got out of work at 5:00 p.m.; (3) after work, Mr. Hubbard spent time with Mr. Tyus and other tenants, talking and listening to music; (4) Mr. Hubbard went to bed at 2:00 a.m., after letting Mr. Tyus's girlfriend in; (5) when Mr. Hubbard woke up, at an unspecified time, he heard Mr. Tyus singing in the shower; (6) Mr. Hubbard

spoke with "Mr. Gorman" before the trial about giving his statement, but never heard back from anyone; and (7) at some point, Mr. Hubbard also reached out to Mr. Tyus's family and the Innocence project, to help any way that he could.  (ECF Doc. 28-1.)[5]

However, as Respondent noted in opposition to the second Motion to Stay (ECF Doc. 29, pp. 5-6), the presumptively correct factual findings of the state court of appeals establish that the 911 calls reporting the first shooting and the discovery of the second shooting victim occurred at 3:39 a.m. and 5:51 a.m. on July 7, 2018, respectively.  *See Tyus*, 2020-Ohio-4455, ¶¶ 2-3.  Given that Mr. Hubbard's alibi testimony, even if accepted as true, does not account for Mr. Tyus's whereabouts after 2:00 a.m. on July 7, 2018, until an unspecified time the next day, the undersigned cannot conclude that the "new" alibi evidence would enable Mr. Tyus to "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Schlup*, 513 U.S. at 327.  This finding is strengthened when one also considers the other evidence offered against Mr. Tyus at trial, including: the first-hand testimony of C.J. regarding her participation in the three attacks with Mr. Tyus; the testimony of B.H. regarding C.J.'s statements identifying Mr. Tyus as one of two men who participated in the shootings; evidence that Mr. Tyus was bunked near one of the victims in 2015-16; and cellular phone evidence placing Mr. Tyus and his co-defendant in the area of the shootings after 3:00 a.m. on July 7, 2018.  *Tyus*, 2020-Ohio-4455, ¶¶ 48-56.  The undersigned therefore concludes that Mr. Tyus has not met his burden to show that a failure to consider the merits of his procedurally defaulted claims would result in a fundamental miscarriage of justice.

---

[5] While Respondent also raises concerns regarding the authenticity of the statement, given issues with illegibility, blurring, and a misspelling by the apparent notary (ECF Doc. 29, p. 5), the undersigned finds it is unnecessary to address the question of authenticity for purposes of this "actual innocence" analysis.

For the reasons set forth above, the undersigned finds that Ground Two was procedurally defaulted, and that Mr. Tyus has not met his burden to show cause or a fundamental miscarriage of justice to excuse the defaults.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Two with prejudice based on procedural default.

### 3.      Ground Three is Procedurally Defaulted

In Ground Three, Petitioner claims his due process rights were violated at trial when photos of his co-defendant holding a gun were admitted.  (ECF Doc. 1, p. 8; ECF Doc. 26, p. 26.)  Respondent argues that Ground Three is procedurally defaulted because Petitioner failed to object to admission of the allegedly objectionable photographs at trial and the state appellate court therefore only reviewed the admission of the photos for plain error under Ohio's contemporaneous objection rule.  (ECF Doc. 13, p. 11 (referencing the *Maupin* criteria).)

Petitioner does not contest that his trial counsel failed to object to the photographs' admission at trial (ECF Doc. 26, p. 26) and does not directly address Respondent's procedural default argument.  However, he does generally suggest (mainly by citing relevant law) that any procedural default should be excused based on ineffective assistance of counsel and a fundamental miscarriage of justice.  (*Id*. at pp. 12-17.)

A petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Williams*, 460 F.3d at 806.  To assess procedural default based on this standard, courts in the Sixth Circuit apply the four-prong *Maupin* analysis.  *See id.* at 807 (citing *Maupin*, 785 F.2d at 138).

Under the first prong of the *Maupin* analysis, this Court must determine whether Mr. Tyus failed to comply with a state procedural rule.  *See* 785 F.2d at 138.  The first prong is met here because, as the state court of appeals noted and Mr. Tyus does not dispute, Mr. Tyus waived

any objection to the admission of the contested photographs by failing to raise that specific objection at trial.  (ECF Doc. 13-1, p. 142); (*see* ECF Doc. 26, p. 26 (noting that only Donyea's counsel objected to admission of the contested photographs).)

"The waiver rule requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review."  *State v. Murphy,* 91 Ohio St.3d 516, 532 (2001).  Thus, "[e]rror that is not specifically objected to at trial is waived."  *State v. Brown*, 38 Ohio St. 3d 305, 312 (1988); *see Condon v. Wolfe,* 310 F. App'x 807, 813 (6th Cir. 2009) (same) (quoting *Brown*, 38 Ohio St. 3d 305); *Nicholson v. Gray*, No. 5:18 CV 379, 2019 WL 6498905, at *8 (N.D. Ohio Sept. 17, 2019) ("Under Ohio's contemporaneous objection rule, any error not objected to at trial is waived absent plain error."), *report and recommendation adopted,* 2019 WL 6493920 (N.D. Ohio Dec. 3, 2019).  Mr. Tyus acknowledged his failure to comply with the contemporaneous objection rule in his appellate brief on direct appeal and only argued that admission of the photographs was plain error under Ohio Crim. R. 52(B), which permits courts to take notice of "plain error . . . under exceptional circumstances and only to prevent a manifest miscarriage of justice."  (ECF Doc. 13-1, pp. 63-65.)

Under the second prong of the *Maupin* analysis, the Court must determine whether the state enforced its procedural rule.  *See* 785 F.2d at 138.  Here, the state court enforced Ohio's contemporaneous objection rule when it noted that Mr. Tyus was entitled only to plain error review under Crim. R. 52(B) due his counsel's failure to object to the contested photos at trial.  (ECF Doc. 13-1, p. 142.)  The court went on to evaluate that admission of the photos under a plain error analysis, finding their admission did not change the outcome of the trial.  (*Id.*)  The Sixth Circuit has repeatedly held that an Ohio court's plain error review "does not constitute a waiver of the state's procedural default rules and resurrect the issue."  *Wogenstahl v. Mitchell*,

668 F.3d 307, 336-37 (6th Cir. 2012) (quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)); *see Cooey v. Coyle*, 289 F.3d 882, 897 (6th Cir. 2002); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989)).  Since the state court of appeals reviewed the claim underlying Ground Three only for plain error under Ohio's contemporaneous objection rule, the undersigned finds the second *Maupin* prong is met.

Under the third prong of the *Maupin* analysis, this Court must determine whether the procedural rule establishes an adequate and independent state law ground under which the claim may be procedurally defaulted.  *See* 785 F.2d at 138.  The Sixth Circuit has held that Ohio's contemporaneous objection rule is an adequate and independent state ground for precluding federal habeas review.  *See Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("We have held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice.") (citations omitted); *see also Keith*, 455 F.3d at 673 (citing *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000)).  Thus, the third prong of the *Maupin* analysis has also been met, and Ground Three was procedurally defaulted.

Mr. Tyus does not present argument regarding the application of the first three *Maupin* prongs, instead arguing that admission of the photographs denied him due process at his trial. (ECF Doc. 26, p. 25.)  Therefore, the undersigned will turn to the fourth *Maupin* prong.  If the first three prongs are met, the fourth prong of the *Maupin* analysis asks whether the procedural default should be excused.  *See* 785 F.2d at 138.  To excuse his procedural default, Mr. Tyus must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750.

Mr. Tyus states in passing that "trial counsel was ineffective" for not objecting to the contested photos. (ECF Doc. 26, p. 26.) He also states generally that his claims are not procedurally defaulted and provides a lengthy articulation of the legal standard for showing ineffective assistance of counsel and a fundamental miscarriage of justice. (*Id*. at pp. 12-17.) The undersigned therefore turns to whether the procedural default should be excused.

As discussed above, "[a]ttorney error that constitutes ineffective assistance of counsel" may show "cause" to overcome default. *Coleman*, 501 U.S. at 754. But "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 488-89. Here, as explained in Section IV.C.2., *supra*, Mr. Tyus's claim that trial counsel provided ineffective assistance by not objecting to the admission of the photographs was procedurally defaulted when he did not appeal the ruling on direct appeal to the Supreme Court of Ohio. "[A] a claim that is itself procedurally defaulted cannot be used as cause to excuse another procedurally defaulted claim." *Goldberg v. Maloney*, 692 F.3d 534, 537 (6th Cir. 2012) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)). Thus, Mr. Tyus has failed to establish cause to excuse the procedural default of Ground Three. Since he has failed to show "cause," it is not necessary to consider the issue of "prejudice." *See Engle*, 456 U.S. at 134, n. 43. Mr. Tyus has therefore failed to support excusing the procedural default of Ground Three based on cause and prejudice.

Finally, for the reasons discussed in detail in Section IV.C.2.ii., *supra*, the undersigned concludes that Mr. Tyus has not demonstrated a fundamental miscarriage of justice would occur if the claims underlying Ground Three were not considered—in other words, that he is actually innocent. *Lundgren*, 440 F.3d at 764 (quoting *Murray*, 477 U.S. at 496).

For the reasons set forth above, the undersigned concludes that Ground Three was procedurally defaulted, and that Mr. Tyus has not met his burden to show cause or a fundamental miscarriage of justice to excuse the defaults.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Three with prejudice based on procedural default.

### 4.      Ground Four is Procedurally Defaulted

In Ground Four, Mr. Tyus claims that his constitutional rights were violated because no evidence was lodged connecting him to the crimes, asserting that there was "no direct or circumstantial evidence" and that "testimony came from drug addicted."  (ECF Doc. 1, p. 10.) Respondent argues that Ground Four was procedurally defaulted because Mr. Tyus (1) did not assert a constitutional challenge to the sufficiency of the evidence on direct appeal and (2) did not appeal the state appellate court's ruling on his challenge to the manifest weight of the evidence under Ohio state law to the Supreme Court of Ohio.  (ECF Doc. 13, pp. 12-13.)  Mr. Tyus recognized both issues in his Petition, arguing that his appellate counsel failed to present a sufficiency of the evidence argument on direct appeal and later failed to appeal the ruling on the manifest weight argument to the Supreme Court of Ohio.  (ECF Doc. 1, p. 10.)

Even setting aside Mr. Tyus's failure to assert a constitutional sufficiency of the evidence challenge in his direct appeal, in favor of a manifest weight of the evidence claim,[6] it is clear that Ground Four was procedurally defaulted because Mr. Tyus did not appeal the state court's ruling on his manifest weight of the evidence claim to the Supreme Court of Ohio.  (*See* ECF Doc. 13-1, p. 167 (stating Petitioner's propositions of law before the Supreme Court of Ohio).)  Because

---

[6] Some courts have found the assertion of a manifest weight of the evidence claim in a direct appeal is sufficient to avoid procedural default on a sufficiency of the evidence claim "because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence."  *Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007); *see Arnold v. Warden, Lebanon Corr. Inst.*, 832 F. Supp. 2d 853, 861 (S.D. Ohio 2011) ("Given the interrelationship between insufficiency of the evidence and manifest weight claims, a state court's finding—that the verdict is not against the manifest weight of the evidence—also implicitly holds that there was sufficient evidence for the verdict.").

Mr. Tyus did not appeal the appellate court's ruling on the claim in Ground Four to the Supreme Court of Ohio, he failed to pursue the claim through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848); *see Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015) (a petitioner must present his claim to the Ohio Court of Appeals and the Ohio Supreme Court).  Thus, Ground Four was procedurally defaulted.

As with Ground Two, Petitioner asserts that he did not raise the claims in Ground Four before the Supreme Court of Ohio because his appellate counsel "failed to raise." (ECF Doc. 1, p. 10; *see* ECF Doc. 26, pp. 12-15.)  To the extent Petitioner intends to argue that ineffective assistance by the attorney who filed his discretionary appeal with the Supreme Court of Ohio is "cause" to excuse his procedural default of Ground Four, that argument must fail for the same reasons articulated in Section IV.C.2.i., *supra*.  Specifically, because Mr. Tyus did not have a constitutional right to be represented by counsel in his discretionary appeal to the Supreme Court of Ohio, *see Finley*, 481 U.S. at 555, this Court cannot consider any alleged attorney error in prosecuting that appeal for the purpose of establishing "cause" to excuse his procedural default, *see Coleman*, 501 U.S. at 757.  Further, for the reasons discussed in Section IV.C.2.ii., *supra*, the undersigned finds Mr. Tyus has not shown that a fundamental miscarriage of justice will occur if the claim in Ground Four is not considered, since Mr. Tyus has failed to make an adequate showing that he is "actually innocent." *Schlup*, 513 U.S. at 324.

For the reasons set forth above, the undersigned concludes that Ground Four was procedurally defaulted, and that Mr. Tyus has not met his burden to show cause or a fundamental miscarriage of justice to excuse the default.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Four with prejudice based on procedural default.

## V.  Request for Evidentiary Hearing

Mr. Tyus requests an evidentiary hearing.  (ECF Doc. 1, p. 15.)  However, his request for an evidentiary hearing is conclusory.  He does not identify what additional evidence might be elicited and has not demonstrated that any evidence he would seek to offer could not have been previously discovered through the exercise of due diligence.  *See generally* 28 U.S.C. § 2254(e)(2).  Given Mr. Tyus's procedural defaults and his conclusory and underdeveloped request for an evidentiary hearing, the undersigned finds he has not shown that an evidentiary hearing is warranted or appropriate.  The request for a hearing is accordingly **DENIED**.

## VI.  Recommendation

In light of the foregoing, the undersigned recommends that the Court **DENY** the Motion to Stay, **DENY** and/or **DISMISS** Ground One with prejudice, and **DISMISS** Grounds Two, Three, and Four with prejudice based on procedural default.[7]


Dated: June 11, 2025

> */s/ Amanda M. Knapp*
> AMANDA M. KNAPP
> UNITED STATES MAGISTRATE JUDGE


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

---

[7] Because Grounds Two, Three, and Four are procedurally defaulted, the Court need not address the parties' arguments regarding the merits of those claims.