## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ORLANDO TYUS, | ) | Case No. 5:22-cv-770 |
| | ) | |
| Petitioner, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Amanda M. Knapp |
| | ) | |
| TIM MCCONAHAY, Warden | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## OPINION AND ORDER

Petitioner Orlando Tyus objects to the Magistrate Judge's report and recommendation that the Court deny his motion to stay (ECF No. 28) and deny and/or dismiss ground one with prejudice and dismiss grounds two, three, and four with prejudice based on procedural default. (ECF No. 31.) For the reasons that follow, the Court **OVERRULES** petitioner's objections (ECF No. 31), **ADOPTS** the Magistrate Judge's report and recommendation, **DENIES** Petitioner's motion to stay (ECF No. 28), and **DENIES AND DISMISSES** the petition.

## STATEMENT OF FACTS

On direct appeal in State court, the intermediate appellate court set forth the following facts leading to the conviction and sentence of Petitioner Orlando Tyus. *See generally State v. Tyus*, 2020-Ohio-4455 ¶¶ 2–7 (Ohio Ct. App.).

Early in the early morning on July 7, 2018, Akron police officers responded to a call reporting a shooting on the north side of Akron. *Id*. ¶ 2. Upon arriving, officers discovered the body of B.R. who had been shot in the back of the head. *Id*. Officers

spoke to C.R., the bother of B.R. *Id.* C.R. reported that two individuals approached him and his brother and demanded money. *Id.* Soon after this interaction, B.R. was shot, and C.R. fled from the scene by foot and called 9-1-1. *Id.*

Later that morning, Akron police received another call regarding a shooting on the south side of Akron. *Id.* ¶ 3. Later, the officers identified this victim as R.M., a homeless individual who did odd jobs in the neighborhood. *Id.* When officers canvassed the area where R.M.'s body was found, they met C.H. who reported that she had been held up at gunpoint earlier. *Id.* ¶ 4. She explained that a man and woman aimed a gun at her head, but when the man went to pull the trigger, the gun failed to fire. *Id.* She fled and later showed officers the site of the incident. *Id.*

At first, these three incidents did not appear to be related. *Id.* ¶ 5. But in August, a woman, B.H., arrested on drug charges and later recruited as a confidential informant, disclosed information about these early morning events the previous month. *Id.* B.H. disclosed that a younger acquaintance named C.J. revealed that she participated in a series of shootings that occurred the weekend after the Fourth of July. *Id.* Also, B.H. provided the names of Bishop and Okra, half-brothers who had participated in the shootings. *Id.* Investigators later discovered that Bishop was Donyea Tyus and Okra was Orlando Tyus. *Id.*

## PROCEDURAL HISTORY

### A.    Conviction in State Court

On September 21, 2018, a grand jury indicted Orlando Tyus and Donyea Tyus in an eight-count indictment. The charges included:  two counts of aggravated murder with a firearm specification (Counts 1 and 3); two counts of murder with a

firearm specification (Counts 2 and 4); two counts of felonious assault (Counts 5 and 6); and each defendant was charged separately for having weapons while under disability (Counts 7 and 8).  (ECF No. 13-1, PageID #106–09.)  On October 2, 2018, Mr. Orlando Tyus entered a plea of not guilty on the seven counts against him.  (*Id*., PageID #110–11.)  In February and April 2019, Mr. Orlando Tyus moved to sever his trial, citing Confrontation Clause issues with two separate witnesses and requested a hearing.  (*Id*., PageID #112–19.)  In May 2019, the State trial court held a hearing on the matter and took it under advisement.  (*Id*., PageID #120.)  Later, the State trial court denied the motion to sever and for separate trials.  (*Id*., PageID #121–28.)

On July 8, 2019, a jury trial commenced, and on July 19, 2019, the jury returned a guilty verdict on all counts against Mr. Orlando Tyus (Counts 1 through 6 and 8).  (*Id*., PageID #129.)  At sentencing, the State trial court merged Counts 1 and 2 and merged Counts 3 and 4.  (*Id*., PageID #132.)  The firearm specifications in Counts 2 and 4 merged with the firearm specifications in Counts 1 and 3.  (*Id*.)  Accordingly, the State proceeded to sentencing on Counts 1 and 3.  The State trial court imposed a sentence of life without parole as follows: a term of life without parole as to Counts 1 and 3; three years for each firearm specification; eight years for Count 5; eight years for Count 6; and three years for Count 8.  (*Id*., PageID #132–33.)  The State trial court ordered the sentences run consecutively.  (*Id*.)

## B. Direct Appeal

On direct appeal, Mr. Tyus's counsel raised six assignments of error:  (1) the State trial court erred by denying the motion to sever; (2) the State trial court erred in admitting overly gruesome photographs of victim R.M.; (3) Orlando Tyus was

denied his right to the effective assistance of counsel; (4) the State trial court erred by admitting photographs of Donyea Tyus with a gun; (5) the State trial court erred in instructing the jury on having weapon while under disability; and (6) the convictions were against the manifest weight of the evidence. (*Id.*, PageID #140–74.) In September 2020, the State appellate court overruled each assignment of error and affirmed the conviction and sentence. (*Id.*, PageID #236–59.)

In November 2020, Mr. Tyus review at the Ohio Supreme Court. (*Id.*, PageID #260–01.) He asserted severance based on the Confront Clause and challenged the admission of evidence at trial. (*Id.*, PageID #269.) On March 30, 2021 the Ohio Supreme Court declined to exercise jurisdiction. (*Id.*, PageID #285.)

## C.    Habeas Petition

On March 1, 2022, proceeding *pro se*, Mr. Tyus filed a petition for a writ of habeas corpus (ECF No. 1), raising four grounds for relief: (1) the State courts violated his constitutional rights by not ordering severance; (2) he received ineffective assistance of counsel when his trial counsel failed to object to the admission of photographs and failed to pursue an available alibi defense; (3) the admission of certain photographs into evidence violated due process; and (4) no evidence connected him to the crimes, in violation of his constitutional rights. (*Id.*, PageID #5–10.)

On June 11, 2025, the Magistrate issued a report and recommendation that the Court deny and/or dismiss ground one with prejudice and dismiss the remaining ground based on procedural default. (ECF No. 30, PageID #2746.) Petitioner objected. (ECF No. 31.) Because his objections are dated June 23, 2025, and

4

postmarked June 27, 2025 (ECF No. 31-2), the Court will treat them as timely. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

## STANDARD OF REVIEW

A district court judge may designate a magistrate judge to submit "proposed findings of fact and recommendations for the disposition, by a judge of the court," 28 U.S.C. § 636(b)(1)(B), of a petition for a writ of habeas corpus, which the Court does by local rule, *see* LR 72.2. When reviewing a report and recommendation, if a party timely objects, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "Objections must be specific, not general" and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues–factual and legal–that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

On review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Importantly, a court's job is not to conduct a free-wheeling examination of the entire report and recommendation, but only to address any specific objections that a party has advanced to some identified portion of it.

5

Accordingly, the Court's task is to review the Magistrate Judge's report and recommendation *de novo*, based on the specific objections Petitioner raises.

## I.     Motion to Stay

In March 2023, Petitioner filed his first motion to stay. (ECF No. 18.)  The Magistrate Judge recommended that the Court deny the motion because Petitioner failed to demonstrate good cause for failing to exhaust claims relating to an alleged alibi witness in State court. (ECF No. 24, PageID #2690.)  With no objection from Petitioner, the Court adopted the Magistrate Judge's interim report and recommendation. (ECF No. 25.)

In December 2024, about seven months before the Magistrate Judge's report and recommendation, Petitioner again moved to stay. (ECF No. 28.)  Again, he based his argument on an available alibi witness; however, this motion identified the alibi witness and included a notarized statement from him. (ECF No. 28-1, PageID #2737.) In her report and recommendation, the Magistrate Judge again recommends that the Court deny the motion to stay, finding that Petitioner failed to establish good cause for the delay in exhausting his claims based on the alibi witnesses.  (ECF No. 30, PageID #2754.)  While Petitioner does not expressly object to the Magistrate Judge's ruling on his motion to stay, the Court construes his last section, under the heading Cause, alternatively as an application for reconsideration or an objection.  (ECF No. 31, PageID #2791–93.)

If construed as a motion for reconsideration of the Court's previous ruling on the issue, the Rules do not formally provide for reconsideration.  But the reasons for altering or amending a judgment under Rule 59 or for obtaining relief from a

judgment under Rule 60 generally delineate the circumstances under which a court will grant reconsideration.  This is so even though, strictly speaking, "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revisited at any time before the entry of judgment[.]"  Fed. R. Civ. P. 54(b); *see also Desai v. Geico Cas. Co.*, 541 F. Supp. 3d 817, 822 (N.D. Ohio 2021).

Justifying reconsideration requires a moving party to:  (1) demonstrate an intervening change in the controlling law; (2) establish that new evidence is available; or (3) prove that a clear error occurred or reconsideration is necessary to prevent manifest injustice.  *See Louisville/Jefferson Cnty. Metro. Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009).  A district court retains discretion to entertain such a motion.  *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 n.7 (6th Cir. 2004).  Further, a district court does not abuse its discretion in denying a motion for reconsideration when it is premised on evidence or arguments available to the party at the time of the original judgment.  *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989).  Such is the case here.  The evidence to which Petitioner points has long been known and available to him.  Therefore, reconsideration of the Court's previous denial of Petitioner's motion to stay is not warranted.

Taken as an objection, to show good cause for the delay in exhausting his claims related to his claimed alibi, Petitioner seeks to pass through the actual innocence gateway of *Schlup v. Delo*, 513 U.S. 298 (1995).  A colorable claim of actual

7

innocence places a case squarely within one of the limited circumstances in which staying and holding in abeyance wholly unexhausted claims is appropriate and consistent with the purposes of the Antiterrorism and Effective Death Penalty Act. *See Misch v. Chambers-Smith*, 656 F. Supp. 3d 761, 765 (N.D. Ohio 2023). "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Credibly proving innocence requires a petitioner to support his allegations with "new reliable evidence . . . that was not presented at trial." *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Schlup*, 513 U.S. at 324). Further, "tenable actual-innocence gateway pleas are rare" and require convincing the district court that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. The evidence presented must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316.

While Petitioner does not present a fulsome argument, he contends that "he has presented a substantial claim of actual innocence to overcome any procedural default." (ECF No. 31, PageID #2793.) From the record, Petitioner has submitted a notarized statement from an alibi witness, claiming that he was home and awake with Petitioner until about 2:00 am on the night of the murder. (ECF No. 28-1, PageID #2737.) To pass through the *Schlup* gateway, Petitioner must present new reliable evidence "such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th

8

Cir. 2018). New evidence requires a showing that the petitioner did not do the crime. *Hubbard v. Rewerts*, 98 F.4th 736, 747 (6th Cir. 2024). The new evidence Petitioner sets forth does not meet that high bar. While he submits a handwritten notarized affidavit from a purported alibi witness, the witness only accounts for Petitioner's whereabouts up until roughly 2:00 am on July 7, 2018. Meanwhile, police did not receive a call about the first victim until roughly 3:45 am on July 7, 2018, leaving Mr. Tyus's whereabouts accounted for such that the affidavit does not show that he did not commit the crime. (ECF No. 14-1, PageID #843-44.) Accordingly, the Court overrules the objection to the Magistrate Judge's ruling on the motion to stay and **DENIES** the motion. (ECF No. 28.)

## II.    Habeas Petition

Where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States," he is entitled to a writ of habeas corpus. 28 U.S.C. §§ 2241(c)(3) & 2254(a). At bottom, the writ tests the fundamental fairness of the State court proceedings resulting in the deprivation of the petitioner's liberty. *See, e.g.*, *Brown v. Allen*, 344 U.S. 443, 463 (1953); *Powell v. Collins*, 332 F.3d 376, 388 (6th Cir. 2003) (citing *Estelle c. McGuire*, 502 U.S. 62, 67–68 (1991)); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"With the AEDPA, Congress limited the source of law for habeas relief to cases decided by the United States Supreme Court."  *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A State court adjudication is "contrary to" Supreme Court precedent under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result.  *Williams*, 529 U.S. at 405.  "Avoiding these pitfalls does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [the] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).

Under section 2254(d)(1), an unreasonable application of federal law is different than an incorrect application of federal law.  *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Williams*, 529 U.S. at 410).  A State court adjudication involves "an unreasonable application of" Supreme Court precedent under Section 2254(d)(1) in one of two ways:  (1) if the State court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular State prisoner's case; or (2) if the State court either unreasonably

10

extends a legal principle from the Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  *See Williams*, 529 U.S. at 407.

At the outset, the Court notes that Petitioner's construed objections are largely reiterations of arguments made in his initial Habeas Petition.  An "objection … that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Hammond v. Mazza*, No. 3:20-CV-751-RGJ, 2023 WL 3582543, at *3 (W.D. Ky. May 22, 2023) (citing *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).  Accordingly, Petitioner's general objections and broad arguments do not qualify as objections, but the Court construes them as such and considers the merits of his arguments.

### II.A.  Motion to Sever Trial

First, Petitioner objects that the State trial court's failure to sever his trial from that of his co-defendant prejudiced him.  (ECF No. 31, PageID #2782.)  At the outset, the Court addresses a comment Petitioner makes.  He writes that he does not need "to overcome AEDPA because the Ohio court never addressed" his argument for severance based on the Confrontation Clause.  (*Id*., PageID #2783.)  But the State courts expressly adjudicated the merits of this claim. *See, e.g.*, *Tyus*, 2020-Ohio-4455, ¶ 12.  Therefore, to prevail on this claim, Petitioner must meet the AEDPA's standard for relief, which is codified in 28 U.S.C. § 2254(d).

Petitioner argues that B.H.'s testimony violated his Sixth Amendment right to confront witnesses against him because she testified about his brother, his codefendant, said.  (ECF No. 31, PageID #2782-83.)  Petitioner does not lodge a

specific objection to any of the Magistrate Judge's determinations.  Instead, he argues that B.H.'s testimony was prejudicial hearsay.  (*Id.*, PageID #2784–85.)  To the extent Petitioner challenges only the evidentiary determination, that decision rests with the State courts and is not cognizable on federal habeas review.  Similarly, to the extent Petitioner challenges only the decision of the State trial court to deny severance, that decision rests within the broad discretion of a trial court and is also not cognizable.  *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (citing *Sinistaj v. Burt*, 66 F.3d 804, 805, 808 (6th Cir. 1995)).  Therefore, the Court limits its analysis to the constitutional dimensions of Petitioner's claims.

Under *Bruton v. United States*, 391 U.S. 123, 137 (1968), "an accused is deprived of his rights under the Confrontation Clause when the confession of a nontestifying codefendant that implicates the accused is introduced into evidence at their joint trial."  *United States v. Cope*, 312 F.3d 757, 780 (6th Cir. 2002)  (citation omitted).  But *Bruton* does not apply to the non-testimonial statements of a co-defendant.  *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009) (citing *United States v. Avila Vargas*, 570 F.3d 1004, 1009 (8th Cir. 2009).  Accordingly, Petitioner's arguments turns on whether the statements at issue are testimonial.

"A statement is testimonial if its primary purpose is to prove past events that are potentially relevant to a later criminal trial."  *Carter v. Larose*, No. 21-3536, 2023 WL 11886018, at *1 (6th Cir. Feb. 3, 2023) (citing *Ohio v. Clark*, 576 U.S. 237, 244–46 (2015)).  If a statement is made to police in the course of an official investigation, that statement is testimonial, but a statement made to a friend or acquaintance is not

12

testimonial.  *United States v. Boyd*, 640 F. 3d 657, 665 (6th Cir. 2011).   Here, Petitioner's co-defendant Donyea made statements to B.H., an acquaintance or friend.  The primary purpose of Donyea's statements was not to create an out-of-court substitute for trial testimony.  *See Michigan v. Bryant*, 562 U.S. 344, 357 (2011). Donyea sought to gauge whether B.H. thought C.J. would disclose what they did to the police.  Because Donyea's statements were not testimonial, their admission does not violate *Bruton* or the Confrontation Clause.  Therefore, the Court **OVERRULES** Petitioner's objection.

### II.B.   Procedural Default

Generally, a federal court may not consider a habeas petition unless a State prisoner has presented his claim to the State court in accordance with the State's procedural rules.  *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022).  Where the petitioner fails to do so, and the State courts would dismiss or deny the claim on that basis, the federal court must do the same because the petitioner has procedurally defaulted the claim. *Id*; *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  However, if "the last State court rendering a judgment in the case" reached the merits, procedural default does not apply.  *Harris v. Reed*, 489 U.S. 255, 263 (1989); s*ee also Victor v. Neb*, 511 U.S. 1, 19 (1994).  Procedural default may be excused where a petitioner can show that an external factor prevented him from complying with the procedural rule at issue, through no fault of his own, and that the alleged constitutional violation resulted in actual prejudice.  *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

The Magistrate Judge determined that Petitioner procedurally defaulted his claim of ineffective assistance of counsel (Ground 2) because he failed to exhaust this

claim on direct appeal.  (ECF No. 30, PageID #2768.)  Petitioner does not provide an argument or case law to support his objection to the Magistrate Judge, he only objects to the holding that he failed to appeal these issues to the Ohio Supreme Court and reiterates his arguments regarding his ineffective assistance of counsel claim.  (ECF No. 31, PageID #2788-89.)

Generally, a federal court can only review habeas claims exhausted in the State courts, not those that are procedurally defaulted.  *Henderson v. Palmer*, 730 F.3d 554, 559 (6th Cir. 2013).  Petitioner failed to present any ineffective assistance of counsel claim to the Ohio Supreme Court, denying the Ohio Supreme Court a full or fair opportunity to rule on the issue.  *Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012).  Accordingly, Petitioner's ineffective assistance of counsel claim is procedurally defaulted.  And he does not object specifically to the Magistrate Judge's determination that he procedurally defaulted the remaining grounds for relief he asserts.

However, Petitioner does point to cause to excuse his procedural default.  (ECF No. 31, PageID #2791–93.)  Because it is unclear whether the argument under the heading "Cause" applies to the motion to stay or to his procedurally defaulted grounds, the Court considers it as a basis for excusing his procedural default as well.  For the same reasons, this argument fails to justify staying and holding in abeyance this action, it also fails to excuse the procedural defaults that bar further review of Petitioner's other grounds for relief.  Therefore, the Court **OVERRULES** Petitioner's objection.

## CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding.  28 U.S.C. § 2253(c)(1).  Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This means that the petitioner must show that reasonable jurists could find the district court's determination of the relevant constitutional claims debatable or incorrect.  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).  The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

In this case, Petitioner fails to make a substantial showing of the denial of a constitutional right.  The statements at issue in his Confrontation Clause claim are plainly non-testimonial, and Petitioner procedurally defaulted his remaining claims. These conclusions are difficult for reasonable jurists to debate.  Although the Court has no objection to appellate review, at least of Petitioner's claim under the Confrontation Clause, it cannot say that Petitioner meets the standard under Section 2253 for issuance of a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections (ECF No. 31), **ADOPTS** the Magistrate Judge's report and recommendation (ECF No. 30), including the recommendation to **DENY** Petitioner's motion to stay (ECF No. 28), and **DENIES AND DISMISSES** the petition.  Pursuant to 28 U.S.C. § 2253,

the Court declines to issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right.

       **SO ORDERED.**

Dated:  August 26, 2025

                                               _____

                                               J. Philip Calabrese
                                             United States District Judge
                                             Northern District of Ohio